STARING, Presiding Judge:
¶1 By special action, petitioner Claudia Duff, a plaintiff in a personal-injury action valued at less than $50,000, challenges the respondent judge's interlocutory order overruling her "Objection to FASTAR Pilot Program" and denying her "Motion for Arbitration Pursuant to A.R.S. § 12-133." She maintains the Fast Trial and Alternative Resolution Program ("FASTAR") does not apply to her case because at the time she filed her complaint, a published Pima County local rule required § 12-133 arbitration for all civil cases in which "the amount in controversy does not exceed $50,000.00."See Ariz. Sup. Ct. Order R-08-0023 (Sept. 30, 2008) (former Rule 4.2). She also argues FASTAR is invalid because it is "prohibit[ed]" by § 12-133 and "violates the Arizona Constitution." For the following reasons, we accept jurisdiction and deny relief, except that we grant Duff additional time to file her FASTAR "Choice Certificate." See FASTAR 103(b)(1).[1]
*1202 Jurisdiction
¶2 Special-action review is highly discretionary and is available only when there is no "equally plain, speedy, and adequate remedy by appeal." Leon v. Marner , 244 Ariz. 465, ¶ 2, 421 P.3d 664 (App. 2018) (quoting Ariz. R. P. Spec. Act. 1(a) ). Duff has no remedy by appeal in this matter. Should she proceed by a short trial under FASTAR, her motion for § 12-133 arbitration would be moot, and the alternative dispute resolution component of FASTAR requires the plaintiff to waive the right to appeal. See FASTAR 103(b)(2)(B). Additionally, this case raises purely legal questions of first impression and statewide importance, including the interpretation and effect of certain constitutional and statutory provisions, as well as the construction of court rules and administrative orders.[2] See, e.g. , Leon , 244 Ariz. 465, ¶ 2, 421 P.3d 664 ("Accepting jurisdiction is appropriate when the question raised is a purely legal matter of statewide importance, and one on which lower courts appear to require some guidance.").
Background
¶3 In 2015, by Administrative Order, our supreme court established the Committee on Civil Justice Reform, whose stated purpose was to "develop recommendations, including rule amendments or pilot projects, to reduce the cost and time required to resolve civil cases in Arizona's superior courts." Ariz. Sup. Ct. Admin. Order No. 2015-126 (Dec. 23, 2015). In its October 2016 report, the committee proposed a "short trial" pilot project for Pima County Superior Court, along with experimental rules "that apply in counties where the Supreme Court and the superior court in a county have authorized a short trial as an alternative to compulsory arbitration under [ A.R.S. § 12-133 and] Rules 72 through 77[, Ariz. R. Civ. P.]." That initial proposal left § 12-133 arbitration limits in place and provided that, in counties participating in FASTAR, "cases that are subject to compulsory arbitration under Rule 72 may instead proceed to a short trial as provided" by the proposed experimental rules. The committee, however, also recommended that a plaintiff in a FASTAR pilot-project county who chooses to proceed by § 12-133 arbitration, instead of by a short trial, be required to waive her rights to a superior court trial de novo and appeal; opportunities otherwise available in § 12-133 arbitration. See § 12-133(H) ("Any party to the arbitration proceeding may appeal from the arbitration award ... by filing ... a demand for trial de novo ...."); see also A.R.S. § 12-2101(A)(1) (affording right to appeal from "final judgment entered in an action ... commenced in a superior court"); Burnett v. Walter , 135 Ariz. 307, 308, 660 P.2d 1234, 1235 (App. 1982) ( § 12-2101(A)(1) provides appellate court with jurisdiction over final judgment after § 12-133(H) trial de novo).
¶4 In October 2017, our supreme court issued another administrative order, adopting a three-year FASTAR pilot program for Pima County, effective November 1, 2017. Ariz. Sup. Ct. Admin. Order No. 2017-116 (Oct. 26, 2017). Under the announced rules, however, which apply only in Pima County during the pilot phase, FASTAR is not an alternative to § 12-133 arbitration, but instead replaces it. See id. The pilot program includes its own "alternative resolution option," in which any arbitration would be binding as to the plaintiff, whose choice to arbitrate within FASTAR "must include express waiver of the rights: (A) to have a trial before a judge or jury, and (B) to appeal the Alternative Resolution decision, award, or judgment to the superior court or to an *1203 appellate court."[3] FASTAR 101(a), 103(b)(2), 126(a)(1). A post-arbitration trial de novo in superior court and subsequent appeal would continue to be available to defending parties. See FASTAR 126(a)(2).
¶5 Pursuant to FASTAR "Eligibility Criteria," cases are subject to the pilot program only if "[t]he amount of money sought by each plaintiff exceeds the limit set by local rule for compulsory arbitration [under § 12-133 ]" and "[t]he amount of money sought by any party does not exceed $50,000, including punitive damages but excluding interest, costs, and attorneys' fees." FASTAR 101(b)(2), (3). To implement FASTAR and "establish the framework necessary to experiment with using short trials and an alternative resolution program instead of compulsory arbitration," the supreme court ordered that "[t]he jurisdictional limit for arbitration claims authorized by A.R.S. § 12-133 is established at one thousand dollars for Pima County for the duration of the pilot program." Ariz. Sup. Ct. Admin. Order No. 2017-116. Because a superior court generally has original jurisdiction only for those civil claims valued at $1,000 or more, see Ariz. Const. art. VI, § 14 (1), (3); State ex rel. Neely v. Brown , 177 Ariz. 6, 8-9, 864 P.2d 1038, 1040-41 (1993), the framework announced by the supreme court effectively eliminated § 12-133 compulsory arbitration in Pima County, see Hon. Jeffrey T. Bergin, Pilot FASTAR Program Aims for Improved Civil Justice , 54-Feb. Ariz. Att'y 28, 30 (2018) (lower limits for § 12-133 arbitration effectively replaced compulsory arbitration with FASTAR).
¶6 As the supreme court noted in its administrative order, the presiding judge of the Pima County Superior Court had requested that § 12-133 arbitration limits be lowered to $1,000. Ariz. Sup. Ct. Admin. Order No. 2017-116. Consistent with Rule 28.1, Ariz. R. Sup. Ct., the presiding judge had, in October 2017, filed a petition asking the supreme court to adopt new Local Rules of Practice for Pima County. Ariz. Sup. Ct. Order R-17-0051 (Oct. 24, 2017). The proposed rules had a new numbering system, such that they were intended to replace the pre-existing local rules in their entirety. Included among the proposed revisions was an amendment lowering the maximum amount for referral to § 12-133 arbitration to $1,000. The petition was opened for public comment in accordance with Rules 28(c) and 28.1(g), Ariz. R. Sup. Ct., see Ariz. Sup. Ct. Order R-17-0051 (Oct. 31, 2017), and our supreme court ultimately issued a final order approving the rule changes, effective July 1, 2018, see Ariz. Sup. Ct. Order R-17-0051 (Mar. 26, 2018).
¶7 In May 2018, Duff filed a complaint seeking damages for injuries she allegedly had suffered in a July 2017 motor vehicle accident involving a Tucson Police Department vehicle. In her accompanying certificate of compulsory arbitration, she certified the amount in controversy "does not exceed the applicable jurisdictional limit of $50,000 set by Pima County Superior Court Local Rule 4.2(a), and further certifies that the case is subject to compulsory arbitration as provided by Rules 72 through 77, A.R.C.P., and A.R.S. § 12-133(A)." She also filed a FASTAR certificate stating that the action did not meet "FASTAR eligibility criteria listed in FASTAR 101(b)," adding, "Specifically, the amount of money sought by the plaintiff does not 'exceed[ ] the limit set by local rule for compulsory arbitration,' FASTAR 101(b)(2), because that limit remains $50,000 under Pima County Superior Court Local Rule 4.2(a)."
¶8 Shortly thereafter, Duff filed an "Objection to FASTAR Pilot Program and Motion for Arbitration Pursuant to A.R.S. § 12-133,"[4] in which she argued the pilot program "is invalid and unconstitutional as applied to her, because it denies her substantive rights to arbitration, trial de novo, and direct appeal set forth in A.R.S. § 12-133 and related statutes." In addition, she maintained her "case *1204 [was] still subject to the existing statutory arbitration system, according to Pima County's [former] Local Rule 4.2(a)," the published local rule prior to July 1, 2018, that required § 12-133 arbitration for any case whose value "does not exceed $50,000.00." Ariz. Sup. Ct. Order R-08-0023 (Sept. 30, 2008). The respondent judge overruled her objection and denied her motion for § 12-133 arbitration, writing:
The Plaintiff's position is not well taken. The Statute in question requires the Superior Court by rule to establish jurisdictional limits for arbitration not to exceed $65,000.00 and requires arbitration for civil cases that do not exceed that jurisdictional limit. As part of the FASTAR Program, the Pima County Superior Court has changed its limits for referring cases to arbitration. The effect of the change is to significantly narrow the range of cases subject to mandatory arbitration. By doing so, the parties' right to a jury trial is preserved, as well as a party's right to appeal from that result. The Program makes available to the Plaintiff an option to voluntarily submit to an alternate dispute mechanism of voluntary arbitration. As part of this election, the Plaintiff voluntarily gives up [her] right to an appeal. Since the Plaintiff is given the right to opt into this alternate dispute mechanism, the Defendant's right to a jury trial and appeal must be preserved. The FASTAR Program provides for this. There is no right to an arbitration in any case, other than those cases that fall within the range prescribed by the Court.
This petition for special action followed.[5]
¶9 Duff contends the respondent judge's order denying § 12-133 arbitration deprives her of "the benefits of compulsory arbitration" were she to participate in a "fast trial," including "the ability to admit evidence of her medical bills, or special damages, without need of an expert witness" and the ability to obtain sanctions if appropriate under Rule 68. And, to the extent the separate alternative dispute provisions of FASTAR are available to her, she asserts they would require her to forgo the opportunities for review by a superior court trial de novo and subsequent appeal. Duff summarizes the issues raised in her special action as follows: "(1) Whether the FASTAR pilot program applies to [her] case. (2) Whether the compulsory arbitration statute, § 12-133, prohibits the FASTAR arbitration program. (3) Whether FASTAR's arbitration program violates the Arizona Constitution."
Discussion
¶10 The Arizona Supreme Court has "constitutional authority to enact rules that govern procedural matters in all Arizona courts." State ex rel. Romley v. Ballinger , 209 Ariz. 1, ¶ 6, 97 P.3d 101 (2004) (citing Ariz. Const. art. VI, § 5 (5)). But that court's adoption of a rule "does not constitute a prior determination that the rule is valid and constitutional against any challenge," Scheehle v. Justices of the Supreme Court of Ariz. , 211 Ariz. 282, 298, 120 P.3d 1092, 1108 (2005), and this court "has the power to determine the validity and constitutionality of the rules promulgated by the Arizona Supreme Court in connection with a case before [it]," State v. Meek , 9 Ariz. App. 149, 151, 450 P.2d 115 (1969). The validity of FASTAR, and its applicability to Duff, are questions of law we review de novo. See In re Marriage of Waldren , 217 Ariz. 173, ¶ 6, 171 P.3d 1214 (2007).
¶11 Duff first argues FASTAR is "prohibit[ed]" by § 12-133, particularly in light of the statute's 1986 amendment "prescribing that the superior court establish jurisdictional limits for arbitration and require arbitration in certain cases." 1986 Ariz. Sess. Laws, ch. 360 pmbl.; see also Scheehle , 211 Ariz. 282, ¶ 6, 120 P.3d 1092 ("In 1986, the legislature amended the statute to require, as opposed to merely permit, superior courts to implement mandatory arbitration programs by rule."). She contends that a $1,000 limit for cases subject to § 12-133 arbitration "is *1205 lower than that mandated by law,"[6] that "FASTAR misappropriates county funds" intended for § 12-133 arbitration,[7] and that FASTAR denies plaintiffs the trial de novo otherwise afforded by § 12-133(H). She also argues FASTAR violates the Arizona Constitution because it conflicts with § 12-133, which she characterizes as "a valid substantive law," requires an involuntary waiver "prohibited by the doctrine of unconstitutional conditions," and "denies plaintiffs the right to appeal," thus "abridg[ing] the appellate jurisdiction of the court of appeals." Most of Duff's arguments regarding the validity and applicability of FASTAR are premised on her contention that § 12-133 affords substantive or vested rights that may not be diminished by court rule.
¶12 Although this court has recognized that the "right to appeal from [ § 12-133 ] arbitration is a statutorily created substantive right," Graf v. Whitaker , 192 Ariz. 403, ¶ 9, 966 P.2d 1007 (App. 1998), we have found no Arizona authority, and the parties have cited none, that addresses whether the initial assignment of a case to § 12-133 arbitration-or to FASTAR or some other mode of proceeding-is itself a substantive right or is instead "the manner in which [a] right may be exercised[,] ... subject to control through the use of procedural rules," id. (quoting State v. Birmingham , 96 Ariz. 109, 110, 392 P.2d 775 (1964) ).[8] As addressed below, we conclude FASTAR, the lowering of Pima County's arbitration limit to accommodate its implementation, and § 12-133 are all essentially procedural. And, "in the event of irreconcilable conflict between a procedural statute and a rule, the rule prevails." Seisinger v. Siebel , 220 Ariz. 85, ¶ 8, 203 P.3d 483 (2009).
Conflict with § 12-133 and Separation of Powers
¶13 The legislative, executive, and judicial branches of Arizona's government "shall be separate and distinct, and no one of such departments shall exercise the powers properly belonging to either of the others." Ariz. Const. art. III. The legislature "has plenary power to consider any subject within the scope of government unless the provisions of the Constitution restrain it." State ex rel. Napolitano v. Brown , 194 Ariz. 340, ¶ 5, 982 P.2d 815 (1999). But the supreme court "shall have ... [p]ower to make rules relative to all procedural matters in any court." Ariz. Const. art. VI, § 5 (5).
¶14 This does not mean our supreme court "will never recognize a statutory rule." State ex rel. Collins v. Seidel , 142 Ariz. 587, 591, 691 P.2d 678, 682 (1984). Rather, it will "recognize 'statutory arrangements which seem reasonable and workable' and which supplement the rules" it promulgates. Id. (quoting *1206 Alexander v. Delgado , 84 N.M. 717, 507 P.2d 778, ¶ 8 (1973) ). And such "statutory rules shall remain in effect until modified or suspended by the rules promulgated by the supreme court." Ariz. Podiatry Ass'n v. Dir. of Ins. , 101 Ariz. 544, 546, 422 P.2d 108, 110 (1966).
¶15 The first step in a separation of powers analysis is determining whether the statute and court rule in question can be harmonized. Seisinger , 220 Ariz. 85, ¶ 24, 203 P.3d 483 ; see also State v. Hansen , 215 Ariz. 287, ¶ 7, 160 P.3d 166 (2007) ("Rules and statutes 'should be harmonized wherever possible and read in conjunction with each other.' ") (quoting Phx. of Hartford, Inc. v. Harmony Rests., Inc. , 114 Ariz. 257, 258, 560 P.2d 441, 442 (App. 1977) ). In Graf , for example, this court declined to invalidate a court rule that "limits appeals from compulsory arbitration to parties who have appeared and participated in the arbitration proceedings," 192 Ariz. 403, ¶ 1, 966 P.2d 1007, a limitation not found in § 12-133. Compare § 12-133(H) (any party to the arbitration proceeding may appeal), with Ariz. R. Civ. P. 77(a).
¶16 In that case, we first noted that § 12-133 is "entirely silent on the subject of waiver of the right to appeal." Graf , 192 Ariz. 403, ¶ 12, 966 P.2d 1007. We then noted that "numerous rules of procedure permit dismissal for procedural violations" but nonetheless do not "impermissibly diminish a litigant's right of action or appeal." Id. ¶ 13. Importantly, we also found the statute and rule at issue shared "a consistency of purpose," as the rule "enhance[d]" mandatory arbitration proceedings by "requir[ing] parties to participate." Id. ¶¶ 10, 14. Thus, we concluded the rule's requirement of participation "does not frustrate but rather advances the intent behind the statute." Id. ¶ 14. Similarly, we determined the rule did not eliminate the right to a jury trial, but established "reasonable prerequisites" for the exercise of that right. Id. ¶ 15 ; see also Phillips v. Garcia , 237 Ariz. 407, ¶¶ 16-17, 351 P.3d 1105 (App. 2015) ( Rule 76, Ariz. R. Civ. P., which conditions appeal from arbitration award on entry of judgment, permissibly "supplement[s]" and "clarif[ies]" § 12-133 ).
¶17 Because Graf and Phillips successfully harmonized the statute and the respective rules at issue, neither court had reason to address whether § 12-133 arbitration "can be characterized as substantive or procedural, the former being the legislature's prerogative and the latter the province" of our supreme court. Hansen , 215 Ariz. 287, ¶ 9, 160 P.3d 166 (identifying inquiry "when a statute and rule conflict"). Here, in briefing, the respondent judge maintains lowering the upper limit for § 12-133 arbitration to $1,000, in order to substitute FASTAR for those proceedings, does not conflict with the statute, because "nothing in the statute's plain language establishes a minimum amount" for cases subject to compulsory arbitration. He maintains we should not "read into" the statute such a requirement.
¶18 But in Scheehle , our supreme court construed § 12-133, as amended since 1986, "to require, as opposed to merely authorize, each superior court to adopt a mandatory arbitration program." 211 Ariz. 282, ¶¶ 6, 20, 120 P.3d 1092.[9] We are unable to reconcile this construction with the suggestion that a county may entirely eliminate that program by setting an upper threshold for referral equal to the base amount of the court's jurisdiction.[10]
¶19 For the same reason, we can find no "consistency of purpose," see Graf , 192 Ariz. 403, ¶ 10, 966 P.2d 1007, between the statute and the amended rule, when the express purpose of Administrative Order No. 2017-116 was to implement FASTAR "instead *1207 of" § 12-133 arbitration in Pima County. Cf. State v. Clifton Lodge No. 1174, Benevolent & Protective Order of Elks , 20 Ariz. App. 512, 513, 514 P.2d 265 (1973) ("Courts must avoid construction of statutes which would render them meaningless or of no effect."). Moreover, we decline to interpret the statute in a manner contrary to the construction set forth in Scheehle , a construction that has presumably been approved by the legislature's subsequent reenactments of the statute. See 2012 Ariz. Sess. Laws, ch. 44, § 1; 2007 Ariz. Sess. Laws, ch. 142, § 1; Scheehle , 211 Ariz. 282, ¶ 19, 120 P.3d 1092 (legislative reenactment of statute construed by supreme court presumed to be adoption of court's construction); City of Mesa v. Smith Co. of Ariz., Inc. , 169 Ariz. 42, 45, 816 P.2d 939, 942 (App. 1991) (court of appeals "bound by the construction of a statute given by the Arizona Supreme Court").
¶20 Accordingly, we must consider the nature of the provisions at issue to determine whether they are subject to the primary authority of the legislature or, alternatively, of the supreme court. Seisinger , 220 Ariz. 85, ¶ 24, 203 P.3d 483 ("[A] determination that a statute and court rule cannot be harmonized is but the first step in a separation of powers analysis."); Hansen , 215 Ariz. 287, ¶ 9, 160 P.3d 166. As the supreme court has explained,
[T]he substantive law is that part of the law which creates, defines and regulates rights; whereas the adjective, remedial or procedural law is that which prescribes the method of enforcing the right or obtaining redress for its invasion. It is often said the adjective law pertains to and prescribes the practice, method, procedure or legal machinery by which the substantive law is enforced or made effective.
Birmingham , 96 Ariz. at 110, 392 P.2d 775.
¶21 Viewed in this context, we conclude § 12-133 is a "procedural" statute. It does not create or define substantive rights, but prescribes the method of enforcing those rights for claims of modest value, as those claims are identified in rules adopted by the superior court in each county. See § 12-133(A). For the same reasons, the change to Pima County's upper limit for § 12-133 arbitration, as well as FASTAR itself, are also procedural matters subject to supreme court rule. Cf. Scheehle , 211 Ariz. 282, ¶ 24, 120 P.3d 1092 (rules requiring attorneys to serve as arbitrators "are valid even if they are not completely cohesive" with § 12-133(C)"so long as they are an appropriate exercise of the court's constitutional authority" to regulate attorneys).
¶22 We thus disagree with Duff that this court "expressly determined" in Graf "that the arbitration statute is substantive." Rather, we concluded in Graf that the "right to appeal from arbitration"-for those subject to § 12-133 arbitration in the first instance-"is a statutorily created substantive right." 192 Ariz. 403, ¶ 9, 966 P.2d 1007. We have also observed that the nature of an "appeal" pursuant to § 12-133(H) -a trial de novo on law and fact-"is essential to the constitutionality of compulsory arbitration," in light of the constitutional right to a jury trial. Valler v. Lee , 190 Ariz. 391, 393, 949 P.2d 51, 53 (App. 1997). And we have held that the judgment that follows a § 12-133(H) trial de novo is subject to appeal in this court. Burnett v. Walter , 135 Ariz. 307, 308, 660 P.2d 1234, 1235 (App. 1982) ; see also A.R.S. § 12-2101(A)(1) (appeal may be taken to court of appeals "[f]rom a final judgment entered in an action or special proceeding commenced in a superior court").
¶23 But none of those rulings alters the nature of § 12-133 arbitration as essentially procedural, as it "prescribes the practice, method, procedure or legal machinery by which the substantive law is enforced or made effective." Birmingham , 96 Ariz. at 110, 392 P.2d 775. To the extent "[a]ny party to the arbitration proceeding may appeal from the arbitration award ... by filing ... a demand for trial de novo on law and fact," § 12-133(H), the statute may properly be viewed not as "creat[ing]" a substantive right as we suggested in Graf , 192 Ariz. 403, ¶ 9, 966 P.2d 1007, but as "prescrib[ing] the method of enforcing" the substantive, constitutional right to a jury trial for those subject to the statutory arbitration procedure. Birmingham , 96 Ariz. at 110, 392 P.2d 775 ; see also Fisher , 236 Ariz. 71, ¶ 34, 336 P.3d 167 (consistent with Graf , state has "power to set *1208 reasonable prerequisites to exercise the right to a jury trial, provided the right is not eliminated"); Valler , 190 Ariz. at 393, 949 P.2d at 53 (constitutional nature of right to jury trial).[11]
¶24 Similarly, Duff acknowledges that the right to appeal to this court is "purely statutory."[12] Although it is a substantive right that "cannot be enlarged or diminished by judicial rule," our supreme court has the authority to regulate the manner in which an appeal may be taken, including rules that provide for waiver of that right. Graf , 192 Ariz. 403, ¶¶ 9-14, 966 P.2d 1007. Thus, just as a procedural rule permissibly conditions the right of appeal under § 12-133(H) on a party's participation in that arbitration process, see id. , a FASTAR rule may condition the right of appeal on a party's participation in the short-trial program. "[A] litigant does not have a vested right in any given mode of procedure ... so long as a substantial and efficient remedy is provided." Ray v. Rambaud , 103 Ariz. 186, 188, 438 P.2d 752, 754 (1968). FASTAR trials provide such a remedy by affording all parties a trial, including by jury, followed by a right to appeal. We cannot agree with Duff that a plaintiff's decision to forgo that opportunity in favor of FASTAR's binding alternative dispute resolution scheme is in any way "involuntary."
¶25 In sum, we conclude we cannot harmonize § 12-133, which "require[s] ... each superior court to adopt a mandatory arbitration program," Scheehle , 211 Ariz. 282, ¶ 20, 120 P.3d 1092, with amended rules that effectively eliminate that program in Pima County, in favor of FASTAR trials. See Hansen , 215 Ariz. 287, ¶ 8, 160 P.3d 166 (court "cannot create harmony where none exists"). However, because the FASTAR changes are procedural, rather than substantive, "modif[ying]" the provisions found in § 12-133, in order to facilitate FASTAR, was within our supreme court's rulemaking authority. Ariz. Podiatry Ass'n , 101 Ariz. at 546, 422 P.2d at 110 ; cf. Seidel , 142 Ariz. at 591, 691 P.2d at 682 (statute allowing admission of breath test results without expert testimony permissible as "alternative to the method of admission under the Rules of Evidence").
Application of FASTAR to Duff's Case
¶26 Duff maintains, "Regardless of the [FASTAR] program's validity, the applicable jurisdictional limit" when she filed her complaint was $50,000,[13] "and it require[d her] case to be referred to compulsory arbitration pursuant to § 12-133." According to Duff's FASTAR certificate, "Notwithstanding the limit set by the Arizona Supreme Court's Administrative Order No. 2017-116, that administrative order is not a 'local rule' by its own terms, by A.R.S. § 12-133(A)(1), or by Rule 28.1, Ariz. R. Sup. Ct." The questions before us thus include whether Administrative Order No. 2017-116 was sufficient to "establish" an upper limit of $1,000 for § 12-133 arbitration, whether that change was dependent on approval of Pima County's new local rules, effective July 1, 2018, and, if the latter date controls, whether the new rule applies to then-pending cases.
¶27 In Arizona, any local rule "must be consistent with rules of statewide application and must be approved by the Supreme Court." Ariz. R. Sup. Ct. 28.1(c). As real parties in interest acknowledge, there exists an arguable conflict of effective dates "between the issuance of the Supreme Court's *1209 Administrative Order and Pima County's adoption of a corresponding local rule lowering the amount in controversy limit for arbitration."
¶28 As a general matter, Rule 28.1, effective January 1, 2017, "governs requests for approval of new or amended local rules for the superior court." Ariz. R. Sup. Ct. 28.1(a). The presiding judge's rule petition, accompanied by a full set of revised and renumbered, proposed local rules for Pima County, complied with those new procedures. Although Rule 28.1 does not provide for a local rule change by administrative order, we cannot say the supreme court lacked authority to establish new § 12-133 arbitration limits in order to implement the FASTAR pilot program in November 2017, with that new limit later reflected in the new Pima County local rules that became effective July 1, 2018.
¶29 In Ballinger , our supreme court emphasized that its constitutional authority to make procedural rules for any court "may not be supplemented, annulled or superseded by an inferior court." 209 Ariz. 1, ¶ 6, 97 P.3d 101 (quoting Anderson v. Pickrell , 115 Ariz. 589, 590, 566 P.2d 1335, 1336 (1977) ). In that case, the state had challenged a Maricopa County Superior Court Administrative Order that established a procedure for criminal defendants to "seek expedited review of a motion to modify pretrial release conditions." Id. ¶¶ 1, 4. The court vacated the order, finding it was, in effect, a local rule that had been implemented without the required supreme court approval. Id. ¶ 12.
¶30 Our supreme court distinguished the functions of a "rule of court" and a lower court's "administrative order," cautioning that local rules require supreme court approval and that "[m]erely placing the 'administrative' label on a measure that functions as a rule of court will not preserve it." Id. ¶¶ 7, 12. But in light of the supreme court's broad constitutional authority to make procedural rules for any Arizona court, we conclude this distinction does not similarly limit the manner in which that court promulgates procedural requirements. See Jones v. Lopez Plascencia , 10 Ariz. App. 253, 257, 458 P.2d 120 (1969) ("The procedure by which [the supreme court] determines to exercise [its constitutional rule-making] powers is peculiarly within its province.").
¶31 As noted in Administrative Order No. 2017-116, the Pima County Superior Court had requested the change to its § 12-133 arbitration limits, in order to facilitate FASTAR, and, consistent with Ballinger , the supreme court approved that request. In addition, implementation of FASTAR in Pima County reflects the supreme court's authority for "administrative supervision over all the courts of the state."[14] Ariz. Const. art. VI, § 3.
Conclusion
¶32 FASTAR and local rules governing § 12-133 arbitration limits are procedural matters subject to the supreme court's constitutional authority. We conclude the change in those limits and the implementation of FASTAR in Pima County were an appropriate exercise of that authority, effective November 1, 2017, as set forth in Administrative Order No. 2017-116. Duff's case is subject to those provisions. Accordingly, we accept jurisdiction and deny relief, with the exception of affording Duff the opportunity to file a FASTAR "Choice Certificate," electing a FASTAR short trial or binding alternative dispute resolution, within twenty days of this order.

Rule 103(b) and (c), FASTAR, provide a case "will proceed by" a short trial if a plaintiff fails to "timely file a Choice Certificate," "not later than [twenty] days after the first filing by any defendant." Duff points out that the respondent judge's order overruling her objection to FASTAR was not issued until after that deadline had lapsed.

The respondent judge agrees that acceptance of jurisdiction in this matter is "appropriate." As stated in Hurles v. Superior Court , a respondent judge may properly file a responsive pleading to a special action when, as here, "the purpose of the response is to explain or defend an administrative practice, policy, or local rule." 174 Ariz. 331, 333, 849 P.2d 1, 3 (App. 1993). Real-parties-in-interest Tucson Police Department and the City of Tucson take no position on the issue of jurisdiction, nor on the issue of FASTAR's validity.

The FASTAR rules provide an exception to the plaintiff's waiver of appeal "[i]f the case includes a counterclaim, cross-claim, or third-party complaint." FASTAR 103(d)(2). In that circumstance, "the plaintiff retains the right to appeal and to have a trial before a judge or jury regarding the decision or award on the counterclaim, crossclaim, or third-party complaint." Id.

The same day, Duff filed a notice of service of an offer of judgment pursuant to Rule 68, Ariz. R. Civ. P.

A different judge granted Duff an interlocutory stay of proceedings pending special-action review of the respondent judge's ruling. After briefing was complete, this court filed a petition to transfer the matter to the Arizona Supreme Court pursuant to Rule 19(a)(1), (3), and (c), Ariz. R. Civ. App. P. The supreme court denied the petition on December 11, 2018.

Section 12-133(A) provides a superior court "shall," "by rule of court," "[e]stablish jurisdictional limits of not to exceed sixty-five thousand dollars for submission of disputes to arbitration" and shall "[r]equire arbitration in all cases which are filed in superior court in which ... the amount in controversy does not exceed [that] jurisdictional limit."

Specifically, Duff argues "the existing FASTAR rules misappropriate public funds without lawful authority" by "attempting to create an elective arbitration program and funding it with compulsory arbitration monies from Pima County's general revenues." Because the record before us is inadequate to address this claim, we decline to do so.

At oral argument, Duff maintained Fisher v. Edgerton , 236 Ariz. 71, 336 P.3d 167 (App. 2014), stands for the proposition that § 12-133 arbitration is a substantive prerequisite to a jury trial-intended, according to Duff, as a real non-judicial alternative subject to legislative control. But in Fisher , this court construed a provision, found in § 12-133 and Rule 77, Ariz. R. Civ. P., that requires a party who appeals from an arbitration award to pay an opposing party's fees and costs on appeal if the judgment at a trial de novo is "not at least twenty-three per cent more favorable than the monetary relief ... granted by the arbitration award." 236 Ariz. 71, n.1, 336 P.3d 167 (quoting § 12-133(I) ); see also Ariz. R. Civ. P. 77(h) (same). Because that identical provision is found in both the statute and the court rules, Fisher provides no guidance as to whether arbitration is a substantive right necessarily subject to legislative control, as Duff maintains, or a manner of procedure properly governed by court rule. Indeed, in Fisher , the court relied on Graf when it explained that "the state has the power to set reasonable prerequisites to exercise the right to a jury trial, provided the right is not eliminated." Fisher , 236 Ariz. 71, ¶ 34, 336 P.3d 167 (emphasis added). And, Graf involved a challenge to a rule of court, not a statute. See 192 Ariz. 403, ¶ 1, 966 P.2d 1007.

In Scheehle , the supreme court affirmed its policy of appointing members of the bar to serve as § 12-133 arbitrators. 211 Ariz. 282, ¶ 2, 120 P.3d 1092. It noted the 1986 amendment several times, see id. ¶¶ 3, 6, 20, stating that, in making that change, "the legislature must have anticipated a corresponding increase in the demand for arbitrators. Yet it made no provision for additional arbitrators. We therefore presume that the legislature relied on this Court's rule authorizing the service of the members of the bar as arbitrators to meet that demand." Id. ¶ 20.

We reject Duff's somewhat strained argument that § 12-133 must be read in conjunction with A.R.S. § 22-201(B), which pertains to justice court jurisdiction, and therefore requires that the base amount for cases subject to § 12-133 arbitration be no lower than $10,000.

The provision for a de novo jury trial in § 12-133(H) is irrelevant to the procedure set forth in the FASTAR rules. It is also unnecessary, from a constitutional standpoint, as FASTAR preserves the jury-trial rights of each party-a plaintiff may opt for a jury trial through FASTAR's "short trial" component, and, if a plaintiff instead chooses FASTAR alternative dispute resolution, the defendant may file for a de novo jury trial after that procedure is complete. See FASTAR 103, 117(a), 126(a)(2). Duff does not argue that a FASTAR "short trial" would be insufficient to satisfy her constitutional right to a jury trial.

Duff originally argued that requiring a waiver of the right to appeal violated the doctrine of unconstitutional conditions. However, the respondent judge correctly notes that this doctrine only prohibits the state from conditioning a privilege on the waiver of a constitutional right, and the right to a civil appeal is statutory. See State v. Quinn , 218 Ariz. 66, ¶ 26, 178 P.3d 1190 (App. 2008).

Before October 2017, former Local Rule 4.2 identified $50,000 as the upper limit for compulsory arbitration under § 12-133. Ariz. Sup. Ct. Order R-08-0023.

Even were we to conclude that FASTAR is limited by the effective date of the 2018 local rule amendments, we reject Duff's assertion that "the new local rules do not apply to [her] case, because her filing date gives her a vested right to statutory arbitration and all the substantive rights it entails." As addressed above, statutory arbitration is not a substantive right, but a procedure, and Duff has no right, vested or otherwise, to a particular procedure. See Ray , 103 Ariz. at 188, 438 P.2d at 754 ; cf. Ariz. R. Civ. P. 81(b)(2)(A), (B) (new rules of procedure apply to cases pending on effective date unless supreme court specifies otherwise or trial court determines application "would be infeasible or work an injustice"); FASTAR 101(c) (FASTAR rules generally "supplement the Arizona Rules of Civil Procedure").